UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BRIAN A. SIDMAN, BETSY VONN GINN, WILLIAM
T. HORNER, and BAS PARKING GROUP PACIFIC,
LLC,

                  Plaintiffs,

        *v.*

CONCORD ARENA PARKING, LLC and ARIEL
JACOBOV,

                Defendants.
----------------------------------------------------------------X
CONCORD ARENA PARKING, LLC and ARIEL
JACOBOV,

                Third-Party Plaintiffs,
        *v.*

PARK 700 PACIFIC, LLC,

                Third-Party Defendant.
----------------------------------------------------------------X

**REPORT &
RECOMMENDATION**
15-CV-7426-CBA-SJB

**BULSARA, United States Magistrate Judge:**

     In this long-running litigation about a failed agreement to acquire a parking

garage in Brooklyn, Brian A. Sidman ("Sidman"), Betsy Vonn Ginn ("Ginn"), William T.

Horner ("Horner"), and BAS Parking Group Pacific, LLC ("BAS Parking" and,

collectively, "Plaintiffs") have sued Concord Arena Parking, LLC ("Concord") and Ariel

Jacobov ("Jacobov" and, collectively, "Defendants") for breach of contract.[1]  Jacobov

---

[1] Compl. dated Dec. 31, 2015 ("Compl."), Dkt. No. 2.  Shaya B. Pacific I LLC
("Shaya Pacific"), Park 700 Pacific LLC, and FCOR LLC were also named as defendants
in the initial complaint.  Plaintiffs voluntarily dismissed Shaya B. Pacific I LLC and
FCOR LLC on February 1, 2016.  (Notice of Voluntary Dismissal Pursuant to F.R.C.P.
41(a)(1)(A)(i) as to Defs. Shaya B. Pacific I LLC and FCOR, LLC Only dated January 31,
2016, Dkt. No. 8).  Park 700 Pacific LLC never appeared in the case.

and his company Concord had entered into a contract to purchase the garage from a third-party. Plaintiffs contributed $700,000 to Park 700 Pacific LLC ("Park 700")—a joint venture between Jacobov and Plaintiffs—to consummate the ultimate purchase. Plaintiffs allege that in December 2015, Defendants, rather than purchasing the garage for the benefit of Park 700, repudiated the contract, and proceeded to purchase the garage for themselves. Plaintiffs began this lawsuit in December 2015. In March 2017, Defendants sued Park 700.[2] Following summary judgment practice, Plaintiffs filed a Third Amended Complaint on April 6, 2020.[3] Defendants answered on April 20, 2020.[4]

Now some six years after the case was initiated, Defendants seek to amend their answer to add two affirmative defenses (fraud and lack of consideration) and two counterclaims, one for breach of contract, the other for breach of fiduciary duty.[5] As a threshold matter, the counterclaims and defenses are untimely; having been brought years after the case was initiated and after the close of discovery, they stand only to prejudice Plaintiffs. The amendments fail on other grounds. Both counterclaims are premised on the same allegation: Plaintiffs' February 2016 transfer of the $700,000 from one escrow account to another was done without Jacobov's consent, and harmed Park 700. Defendants anchor this consent requirement in the Operating Agreement

---

[2] Third-Party Compl. dated March 3, 2017 ("Third-Party Compl."), Dkt. No. 41. BAS Parking is a Florida LLC, with Sidman serving as its only member. Concord is a New York LLC, with Jacobov as its only member.

[3] Third Am. Compl. dated Apr. 6, 2020 ("TAC"), Dkt. No. 117.

[4] Answer to Third Am. Compl. dated Apr. 20, 2020 ("Answer"), Dkt. No. 119.

[5] Notice of Mot. dated Mar. 1, 2021 ("Mot."), Dkt. No. 140.

governing the activities of Park 700. Besides being untimely, the claim is nonsensical: Jacobov (along with the other Defendant, Concord) sued Park 700, making it impossible for him to be both adverse to and stand in the shoes of Park 700 in the same lawsuit. But it is futile for other reasons: Jacobov has asserted that after December 31, 2015, he was not a managing member of Park 700; as someone who lacked any membership interest, his consent could not have been required for a Park 700 transaction that took place after his resignation. Moreover, consent was only required for transactions that returned capital back to Plaintiffs, and a transfer of escrow from one account to another is decidedly not such a transaction.

As for the affirmative defenses, fraud and failure of consideration, they too are futile. The fraud claim is not pled with the requisite particularity as required by Rule 9(b), and the failure of consideration defense is predicated on a two-month delay in depositing the final $100,000 in escrow. This delay in timing was a technical breach; not a material, substantial one that would justify the rescission of the agreement, as Defendants now demand.

For the reasons stated below, the Court respectfully recommends that Defendants' motion be denied.[6]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2013, Jacobov learned of an opportunity to purchase a parking garage and commercial unit associated with a condominium development in Brooklyn, New York.[7]

---

[6] The Honorable Carol Bagley Amon referred the motion to the undersigned for Report & Recommendation. Order Referring Mot. dated Apr. 2, 2021.

[7] TAC ¶¶ 10, 12.

At the time, First Central Savings Bank ("FCSB") held a lien against certain membership units in the condominium development; these units were owned by Shaya Pacific.[8]  On June 10, 2013, Concord contracted with Shaya Pacific and FCSB to purchase the parking garage and commercial space, subject to the various liens and mortgages attached to the properties.[9]  The sales contract permitted Concord to cancel the agreement if it was unable to secure financing for 70% of the purchase price.[10]  Further, Concord could assign the contract if certain conditions were met, including if Jacobov was the majority or controlling shareholder or member of the assignee.[11]

As of January 2015, Concord, FCSB, and Shaya Pacific were still finalizing the terms of the contract and had not yet closed on the property.[12]  FCSB agreed to issue a $3,675,000 loan commitment to Concord, leaving Concord with $650,000 to raise toward the $4,325,000 agreed-upon purchase price.[13]  At the same time, Jacobov and Sidman began discussing forming a joint venture to raise the remaining $650,000.[14]  They, along with Ginn and Horner, formed Park 700, to provide the outstanding funding and to trigger Concord's ability to assign the sales contract.[15]  The parties

---

[8] *Id.* ¶ 11.

[9] *Id.* ¶¶ 12–14.

[10] *Id.* ¶ 14.

[11] *Id.* ¶ 15.

[12] *Id.* ¶ 16.

[13] *Id.* ¶ 17.

[14] *Id.* ¶¶ 18–19.

[15] *Id.* ¶ 19.

executed an Operating Agreement for Park 700 in May 2015.[16] Sidman and Jacobov were the managers of Park 700, Horner, Ginn, and Sidman were the primary investors (Horner contributed $600,000 and Ginn and Sidman, through BAS Parking, each contributed $50,000), and Jacobov was the majority member.[17] The $700,00 was first placed in escrow with the firm of Salamon Gruber Blaymore & Strenger, P.C. ("Salamon Gruber").[18]

The Operating Agreement contained a "Drop Dead Date" by which each member's contributions could be returned if the parties did not close on the underlying sale.[19] Specifically, if the sale of the parking garage and commercial space did not close within 90 days of the execution of the Operating Agreement, Park 700 would "promptly" return each member's contributions, unless all members unanimously consented to an extension.[20] The parties also executed a Side Letter contemporaneously reflecting the expectation both that Park 700 would receive the assignment of the contract from Concord and that the purchase price would likely change prior to closing.[21]

---

[16] *Id.* ¶ 20.

[17] *Id.* ¶¶ 19, 21–23.

[18] *Id.* ¶ 41.

[19] *Id.* ¶ 25; Operating Agreement for Park 700 Pacific, LLC A New York Limited Liability Company dated May 5, 2015 ("Operating Agreement"), attached as Ex. B to TAC, Dkt. No. 117 ¶ 1.24. The Court may consider the Operating Agreement in ruling on the Motion since the Operating Agreement is incorporated by reference to the TAC. A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

[20] Operating Agreement ¶ 1.24.

[21] TAC ¶¶ 27–33. This likely explains—because the parties do not—why $700,000 instead of $650,000 was raised and placed in escrow.

On October 1, 2015, the parties amended the Operating Agreement to extend the Drop Dead Date to December 31, 2015.[22] Concord, FCSB, and Shaya Pacific did not close on the property at that time. After the Drop Dead Date, on February 19, 2016, the $700,000 in escrow funds were transferred to an escrow account of the Rosen Law LCC ("Rosen Law") firm.[23] Jacobov independently purchased the garage in November 2017.[24]

Plaintiffs commenced this action on December 31, 2015.[25] Defendants moved for summary judgment against Plaintiffs on March 12, 2018,[26] and Plaintiffs cross-moved for partial summary judgment on April 4, 2018.[27] The Court granted Defendants' motion in part and denied Plaintiffs' motion; the Court also gave Plaintiffs leave to move to file a Third Amended Complaint.[28] Plaintiffs so moved,[29] and the Court granted

---

[22] *Id.* ¶ 37.

[23] Letter from Gary Rosen to Brian A. Sidman et al. dated Feb. 19, 2016 ("Rosen Letter"), attached as Ex. G to Decl. of Matthew Cono Capozzoli dated Mar. 1, 2021 ("Capozzoli Decl."), Dkt. No. 141 at 1.

[24] TAC ¶¶ 39–41, 47–49.

[25] Compl.

[26] Notice of Mot. dated Mar. 7, 2018, Dkt. No. 77.

[27] Notice of Mot. for Partial Summ. J. dated Apr. 4, 2018, Dkt. No. 84.

[28] Order dated Mar. 15, 2019, Dkt. No. 100.

[29] Notice of Mot. for Leave to Amend Second Am. Compl. and File Suppl. Compl. dated Apr. 3, 2019, Dkt. No. 101.

Plaintiffs' motion in part.[30]  Plaintiffs filed their TAC on April 6, 2020.[31]  They alleged two causes of action: breach of fiduciary duty against Jacobov and breach of contract against all Defendants.[32]  Defendants timely filed an answer, which asserted three affirmative defenses: failure to state a claim; reduction of damages as setoff; and bar of Plaintiffs' claims due to laches, waiver, or estoppel.[33]  The Court held a final pretrial conference with the parties on March 1, 2021, in which the parties indicated that the discovery deadlines had passed (but Defendants indicated an intent to move for leave to amend their answer and to seek additional discovery).[34]  On April 1, 2021, Defendants moved to amend their answer to add two affirmative defenses—fraud and failure of consideration—and two counterclaims—breach of fiduciary duty and breach of contract.[35]

## DISCUSSION

---

[30] Mem. & Order dated Apr. 1, 2020, Dkt. No. 116.

[31] Dkt. No. 117.

[32] *Id.* ¶¶ 56–65.

[33] Answer at 7.

[34] Min. Entry & Order dated Mar. 1, 2021; Tr. of Civ. Cause for Telephone Conference dated Mar 1, 2021 ("Tr."), Dkt. No. 153 at 2:14–3:13.

[35] Mot.; Proposed Answer to Third Am. Compl. dated Mar. 1, 2021 ("Proposed Answer"), attached as Ex. H to Capozzoli Decl., at 8; Proposed Countercls. dated Mar. 1, 2021 ("Proposed Countercls."), attached as Ex. H to Capozzoli Decl., ¶¶ 19–29.

I.    Counterclaims

Jacobov seeks to add two counterclaims: breach of contract and breach of fiduciary duty.  (Proposed Countercls. ¶¶ 19–29).[36]  These counterclaims are both premised on the allegedly non-consensual transfer of the $700,000 contributed by Sidman, Horner, and Ginn and first placed in escrow with Salamon Gruber and later transferred to Rosen Law LLC in February 2016.[37]  Both counterclaims are untimely and futile.

A.    Undue Delay

"Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013) (quoting Fed. R. Civ. P. 15(a)).

> A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  These standards of Rule 15 apply to motions to amend an answer to add affirmative defenses and counterclaims.  *See, e.g.*, *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95, 98–100 (2d Cir. 2019) (applying Rule 15(a) to motion to amend answer to add counterclaims and affirmative defenses).  Rule

---

[36] New York law governs the enforcement of the Operating Agreement. (Operating Agreement ¶ 12.4).

[37] Mem. of Law in Supp. of Mot. dated Mar. 1, 2021 ("Mem."), Dkt. No. 142 at 2–3; Rosen Letter at 1; *see also* TAC ¶¶ 23, 41).

15(a)(2) applies here because Defendants moved more than 21 days after service of their answer.

Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); 6 Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1480 (3d ed. 2021) ("When this time period expires or the party already has amended the pleading, [amendment as of right] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party."); *CSX Transp., Inc.*, 2013 WL 12329546, at *2. "In general, district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quotations omitted).

Rule 16 also bears upon whether the Court should grant leave to amend. It requires the Court to issue a scheduling order that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (Sotomayor, J.) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment).

> Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.

*Mason Tenders Dist. Council v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citing *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009)); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes*, 568 F.3d at 335 (quoting *Grochowski v. Phoenix Constr.*, 381 F.3d 80, 86 (2d Cir. 2003)). "While the diligence inquiry is the primary consideration, courts may also consider other relevant factors including whether the proposed amendment would result in prejudice to defendants." *Mason Tenders*, 318 F.R.D. at 37. "[A] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline" to amend the pleadings. *Weaver v. Warrington*, No. 14-CV-7097, 2018 WL 5253110, at *2 (E.D.N.Y. Oct. 22, 2018) (quoting *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861, 2014 WL 6611454, at *10 (S.D.N.Y. Nov. 21, 2014)). And, further, "courts in this circuit routinely hold that motions to amend are untimely when filed after the close of discovery." *Id.* at *2.

Plaintiffs filed the TAC on April 6, 2020,[38] and Defendants answered on April 20, 2020.[39] Since that time, the parties have asked to amend and extend the discovery schedule five separate times. (*See* Letter dated May 8, 2020, Dkt. No. 121; Letter Mot. dated June 28, 2020, Dkt. No. 124; Mot. dated July 23, 2020, Dkt. No. 127; Mot. dated

---

[38] Dkt. No. 117.

[39] Dkt. No. 119.

Oct. 29, 2020, Dkt. No. 131; Min. Order dated Dec. 2, 2020, Dkt. No. 134). In none of these motions did they contemplate setting or extending the deadline to amend the pleadings. Indeed, they only provided proposed schedules for the completion of discovery; that is, they acted as though the events precedent to the close of discovery, *i.e.* the expiration of the time to amend, had long passed. As such, Jacobov would have to establish good cause for this long delay in the proposed amendments. He cannot.

Jacobov had knowledge of the February 2016 transfer at least three years before filing the motion. Defendants deposed Sidman on December 28, 2017. (Tr. of Dep. of Brian A. Sidman dated Dec. 28, 2017 ("Sidman Tr."), attached as Ex. A to Decl. of Benjamin H. Brodsky dated Apr. 1, 2021 ("Brodsky Decl."), Dkt. No. 144). At the deposition, Jacobov's counsel asked Sidman about the transfer of the escrow funds from Salamon Gruber to Rosen Law LLC. (*Id.* at 52:25–55:10). While the exact date of the transfer was not discussed, that Jacobov's counsel asked Sidman about the transfer demonstrates that Jacobov knew the transfer had occurred (and had occurred prior to the date of the deposition). Jacobov also knew that he did not explicitly consent to such a transfer. Therefore, Jacobov had the requisite knowledge to assert the proposed counterclaims as early as December 2017.

Defendants argue that although "Defendants were aware of the transfers," Reply dated Apr. 1, 2021 ("Reply"), Dkt. No. 145 at 4, Plaintiffs "concealed facts that would have led Defendants to identify viable claims" and recently produced documents enabled them to "learn the truth." *Id.* These vague statements—which fail to identify any particular document or fact—do not justify the delay; they do not identify a material element of the counterclaims that was not previously known. The relationships between the parties, the date of the transfer, and Jacobov's lack of consent—which is all that was

necessary to set forth the counterclaims—was known well before the close of discovery. There is no good cause to amend the scheduling order. *See, e.g.*, *Parker*, 204 F.3d at 340-41 (2d Cir. 2000) (affirming finding of absence of good cause to amend where "all the information necessary to support" a new claim was available to the movant "throughout the . . . litigation"); *Williams v. Town of Hempstead*, No. 16-cv-1992, 2017 WL 4712219, at *3 (E.D.N.Y. Oct. 18, 2017) (finding no good cause to amend where "changes [were] based on facts that were present in the original complaint."); *Sokol Holdings, Inc. v. BMD Munai, Inc.,* No. 05-CV-3749, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases).

Even if there were no controlling scheduling order, this long undue delay in seeking amendment is still excessive and prejudicial to Plaintiffs (a point that goes unaddressed in Defendants' papers), since the amendment takes place after the close of discovery, and would require, at a minimum, reopening of depositions already taken, and further delay of this litigation. *See, e.g., McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201 (2d Cir. 2007) (affirming denial of leave to amend under Rule 15 given "inordinate delay" and where motion was filed after close of discovery).

B. Futility

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Berlin v. JetBlue Airways Corp.*, 436 F. Supp. 3d 550, 560 (E.D.N.Y. 2020) (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *Id.* (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d

383, 389 (2d. Cir 2015)). "If the problems with a claim are substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to replead would be futile and should be denied." *Id.* (quoting *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005)) (quotations omitted).

Jacobov seeks to assert counterclaims for harm suffered by Park 700. (*See* Proposed Countercls. ¶ 24 ("As a result of the misconduct alleged herein, *Plaintiffs are liable to the [sic] Park 700* in an amount to be determined at trial." (emphasis added)); *id.* ¶ 29 ("As a result of Plaintiffs' breach of the Operating Agreement, *Park 700 has been damaged.*" (emphasis added)). But nowhere does he explain why he can assert Park 700's rights or bring claims for damages on its behalf. Park 700 is separately represented in this case. (*See* Third-Party Def. Park 700 LLC's Answer and Affirmative Defenses dated July 9, 2020, Dkt. No. 126). And, indeed, Jacobov is *adverse* to Park 700 in this case. He sued Park 700 for indemnification and fees and costs incurred during litigation. (*See* Third-Party Compl. dated May 4, 2020, Dkt. No. 120 ¶ 8–9). It is axiomatic that a party cannot represent another and be adverse to the party *in the same action*.

Even if that were not a problem, he lacks standing to bring a derivative claim for harm suffered by Park 700. A claim is considered derivative where "the remedy sought is for the wrong done to the [business entity]." *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 786 (S.D.N.Y. 2011) (alteration in original), *aff'd*, 479 F. App'x 375 (2d Cir. 2012). Because the breach claim alleges harm to Park 700, not to himself, Jacobov's claim is derivative.[40] "[I]t is well-settled that a shareholder seeking to bring a derivative

---

[40] Indeed, the proposed pleading contains a section on "demand futility," a reference to the prerequisite for a derivative claim, a quintessential corporate, not

13

claim on behalf of a corporation, in order to have standing, must have been a shareholder both at the time of the alleged wrongdoing, and at the time the suit is filed." *Id.* (collecting cases). And this rule has been extended to LLCs. *See, e.g.*, *Tatintsian v. Vorotyntsev,* No. 1:16-CV-7203, 2019 WL 1746004, at *10 (S.D.N.Y. Apr. 18, 2019).

Yet by his own admission, Jacobov was not a member of Park 700 in February 2016 (at the time of the alleged improper transfer) and is not a member now. (Proposed Countercls. ¶ 9 ("As of December 31, 2015, Jacobov was no longer a manager of Park 700."); *id.* ¶ 15 ("Sidman is currently the only managing member of Park 700."); *accord* Answer ¶ 57 (denying statement that as a manager and majority shareholder of Park 700, Jacobov owed a fiduciary duty to Plaintiffs); Defs.' Resp. to Pls.' Rule 56.1 Statement of Undisputed Facts dated Apr. 30, 2018 ("Defs.' Rule 56.1 Statement"), Dkt. No. 91 ¶ 32).[41] Jacobov therefore lacks standing to bring a derivative suit on behalf of Park 700. *See, e.g.*, *Cordts-Auth*, 479 F. App'x at 381 ("Because we find that Cordts–Auth was not a Member at the time of Crunk's dissolution, and indeed was never a Member of Crunk, she does not have standing to bring derivative claims on behalf of Crunk or its Members.").

Jacobov tries to couch his claims in the conditional, suggesting that the counterclaims are necessary only *if* he is deemed to have been a managing member after

---

individual, action. *See* Fed. R. Civ. P. 23.1(b)(3); *see also Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) (explaining that in shareholder derivative actions, the party bringing suit must first exhaust remedies by making a demand for relief on the board of directors, unless futile).

[41] In ruling on this Motion, which was made after the close of discovery and after parties filed motions for summary judgment, the Court may consider the full evidentiary record before it. *See, e.g., DiPace v. Goord,* 308 F. Supp. 2d 274, 278–79 (S.D.N.Y. 2004).

December 31, 2015: "[i]f Jacobov is deemed to have been a manager of Park 700 after December 31, 2015, Sidman breached his fiduciary duties to Park 700[.]" (Proposed Countercls. ¶ 9). This does not give Jacobov standing. For one thing, he has not actually pled anywhere that he was a member after December 31, 2015; he has only pled that he ceased being a member on December 31, 2015. (Proposed Counterclaims ¶¶ 9, 15). *See J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186, 2018 WL 2709222, at *8 (E.D.N.Y. May 18, 2018) ("To actually plead in the alternative, J&J has to plead facts in the alternative. It has fallen short. J&J did not actually allege that the Event was a satellite communication, and simultaneously allege, in the alternative, that the Event was a cable communication. Rather, it brought causes of action based on such communications but failed to state the predicate fact necessary for either violation." (internal citation omitted), *report and recommendation adopted*, 2018 WL 2709200 (June 5, 2018)). In other words, there are no facts pled that demonstrate standing here. For another, while legal theories can be pled in the alternative, *see* Fed. R. Civ. P. 8(d)(2), as can facts, *id.*, there must be a good faith basis to do so. *See Henry v. U.S. Dep't of Homeland Sec.*, No. 10-CV-2164, 2011 WL 477719, at *7 (E.D.N.Y. Feb. 2, 2011). There must be, for example, some basis for the pleader to believe he does not have information sufficient to plead definitively. But here, Jacobov has consistently stated that he was not a member of Park 700 after December 31, 2015, including in opposition to a motion for summary judgment. Defs.' Rule 56.1 Statement ¶ 32. By this point in the case, after discovery and dispositive motions have been completed, any uncertainty should have been or was resolved. Jacobov's ability to plead in the alternative has long gone, by the force of his prior admissions. An alternative pleading at this point would be in bad faith.

The breach of contract claim is also futile on its own terms. "Under New York law, 'a [party] bringing a breach of contract claim must allege (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach.'" *Naftali v. N.Y. Deferred Exch. Corp.*, No. 15-CV-7152, 2017 WL 4325725, at *7 (E.D.N.Y. Aug. 15, 2017) (quoting *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *7 (E.D.N.Y. May 19, 2014)), *report and recommendation adopted*, 2017 WL 4286260 (Sept. 26, 2017).

Jacobov alleges that "Plaintiffs breached the Operating Agreement by failing to obtain Jacobov's consent prior to completing the 2016 Transfer and taking other actions on behalf of Park 700." (Proposed Countercls. ¶ 28). And he argues that approval of the Managers of Park 700 was required to complete the February 2016 transfer. (*Id.* ¶ 13). Neither is a breach of the Operating Agreement.

The Operating Agreement provides that unanimous consent of the Managers is required to "[a]mend this Agreement without further consent or vote of any of the Members to reflect . . . any reduction of the capital accounts resulting from the return of capital to Members[.]" (Operating Agreement ¶ 5.3.1.10). First, as discussed *supra*, Jacobov has stated that he "was no longer a manager of Park 700" as of December 31, 2015. (Proposed Countercls. ¶¶ 8–9). Therefore, even if capital had been returned to members, because he was a non-member, Jacobov's approval was unnecessary. But even still, there is no allegation that the funds were actually returned to Plaintiffs. That is, there has not been any "return of capital" that would have required the consent of any members of Park 700. Instead, the escrow funds were transferred from one firm to another and remained in escrow. (Rosen Letter at 1 ("This is to confirm that we will be receiving the sum of $700,000 from Salamon, Gruber, Blaymore & Strenger, P.C. for

placement in the escrow account set forth below.  We will hold the funds in escrow until we receive directions from all three of you unanimously as to how we are to disburse the funds.  Rosen Law LLC ("Escrow Agent") will be acting as escrow agent for you.")).

Defendants attempt to remedy this by arguing that the February 2016 transfer led to the escrow not being "held for the benefit of Park 700." (Proposed Countercls ¶ 12). This is belied by the record.  The $700,000 was not returned in February 2016 to Plaintiffs.  They remained in an escrow account and were not returned to any of the Plaintiff members of Park 700.  Indeed, over a year later they were again transferred, in escrow, to the account of the firm Squire Patton Boggs.[42]  (*See* Letter from Paul Myung Han Kim, Squire Patton Boggs (US) LLP, to Brian A. Sidman, et al. (May 2, 2017), attached as Ex. B to Brodsky Decl.).  Without a transfer to Plaintiffs, there was no violation of the terms of the Operating Agreement.  Quite obviously, without a breach, there cannot be a contract counterclaim.

There is a separate problem.  It is not obvious what damages Park 700 could possibly have suffered from failing to obtain Jacobov's consent to moving the $700,000. Damages is an element of a breach of contract claim, and the essential facts attendant to that element must be pled in a non-conclusory fashion.  *Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11 CIV. 8440, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 513 F. App'x 109 (2d Cir. 2013).  All the proposed counterclaims state is that "Park 700 has sustained significant damages." (Proposed Countercls ¶ 23).  It is

---

[42] Property in "escrow" is that "property delivered by a promisor to a third party to be held by the third party for a given amount of time or until the occurrence of a condition, at which time the third party is to hand over the document or property to the promisee[.]" Black's Law Dictionary 662 (10th ed. 2014).  The $700,00 remained in escrow while it was held by Rosen Law LLC and then subsequently by Squire Patton Boggs (US) LLP, as the escrow letters submitted by the parties demonstrate.

hard to imagine what loss Park 700 could have suffered from failing to give Jacobov's consent to the transaction (and since Jacobov is suing derivatively, the injury cannot be to Jacobov). In any event, it is not pled in a non-conclusory fashion, and results in the claim failing, even at the pleading stage. *See, e.g.*, *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13 CIV. 519, 2014 WL 1383703, at *11 (S.D.N.Y. Mar. 31, 2014) ("Plaintiffs have failed to plead any facts showing that EAA suffered any damages from the alleged breaches.").

This problem also renders Jacobov's breach of fiduciary duty futile. "Under here applicable New York law, the elements of a breach of fiduciary duty claim are '(1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach.'" *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 441 (S.D.N.Y. 2019) (quoting *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009)).

Defendants contend that Sidman breached his fiduciary duty by "allow[ing] the Escrow Funds to be transferred to an account controlled by Plaintiffs without Jacobov's consent." (Proposed Countercls. ¶ 21). But again, Jacobov states he was not a manager after December 31, 2015. Sidman, therefore, did not need Jacobov's consent prior to the transfer. Moreover, discussed *supra*, the funds were not transferred back to the Plaintiffs, but between law firms, and kept in escrow. Without a breach, there can be no fiduciary duty counterclaim.

Finally, there is a separate problem unique to an allegation of breach of fiduciary duty. A fiduciary duty claim cannot exist when the basis for the claim is the allegation that terms of a contract were not adhered to. *See, e.g.*, *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-CIV-4362, 2012 WL 1890388, at *9 (S.D.N.Y. May 23,

2012) ("[T]o the extent that the Complaint's fiduciary duty claim is premised upon failure to perform under the agreed terms of a contract, the plaintiffs fail to state a claim under New York law."); *Pane v. Citibank, N.A.*, 19 A.D.3d 278, 279 (1st Dep't 2005) ("Nor can defendant's failure to promptly act on plaintiffs' oral instruction, or to advise plaintiffs that the instruction had to be in writing, be deemed a breach of fiduciary duty given a formal written agreement covering the precise subject matter of the alleged fiduciary duty."); *accord Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238, at *9 (E.D.N.Y. May 11, 2012) ("Where a defendant owes no duty to the plaintiff outside of that created by the contract, a breach of fiduciary duty claim will not lie."). This is true even when the parties to the agreement stand in a fiduciary relationship. *Barbagallo*, 2012 WL 1664238, at *9. Here, the fiduciary duty counterclaim is premised on Sidman's purported failure to obtain Jacobov's consent—a requirement Jacobov tethers to the Operating Agreement. Such a breach of a contractual obligation, even though Sidman had a fiduciary obligation to Park 700, cannot be the basis of a breach of duty claim.

For these reasons, the breach of fiduciary duty counterclaim is also futile.

II.    <u>Affirmative Defenses</u>

Defendants also seek to amend their Answer to add two affirmative defenses: fraud and failure of consideration. (Proposed Answer at 8). The parties executed the Operating Agreement in May 2015. (TAC ¶ 20). Defendants allege that, by that date, Horner, Ginn, and Sidman were required to transfer their respective investments to the escrow account, (Mem. at 3); Plaintiffs contest that this was not a condition of the contract, (Pls. Mem. of Law in Opp'n to Defs.' Mot. to Amend, Dkt. No. 143 at 13–14). According to third-party documents produced in January 2020, Sidman and Ginn's

respective $50,000 investments were placed in escrow on July 30, 2015.  (*See* Emails to

Phyllis Zucaro ("Ex. F"), attached as Ex. F. to Capozzoli Decl.).  In other words, of the

$700,000 to be placed in escrow, $600,000 was placed in escrow prior to the execution

of the Operating Agreement, and the remaining $100,000 was allegedly placed

afterwards.  The new affirmative defenses are based upon these alleged facts.  (Mem. at

5).  Both are futile.

 As for fraud, in New York, it may be raised as an affirmative defense.  *See* David

D. Siegel, N.Y. Prac. § 223 (6th ed. 2021).  "Rule 9(b) requires a defendant to plead

affirmative defenses alleging fraud with particularity."  *Trs. of Loc. 813 Ins. Tr. Fund v.*

*Wilner's Livery Serv., Inc.*, No. 11-CV-3180, 2012 WL 4327070, at *2 (E.D.N.Y. Sept. 19,

2012); *see also State St. Glob. Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 439–40

(S.D.N.Y. 2020) (same).  "To state an affirmative defense with the required particularity,

a party must: (1) specify the statements that the party contends were fraudulent; (2)

identify the speaker; (3) state where and when the statements were made; and (4)

explain why the statements were fraudulent."  *Accord Trs. of Loc. 813 Ins. Tr. Fund*,

2012 WL 4327070, at *2.

 Defendants have done none of these things.  Their affirmative defense is bare-

bones and conclusory, stating only, "Plaintiffs' claims are barred, in whole or in part, by

Plaintiffs' fraud and other misconduct."  (Proposed Answer at 8).  They do not identify

the alleged fraud or any of its surrounding circumstances, the parties who committed

the alleged fraud, or any explanation of why Plaintiffs' behavior was fraudulent.

Because the affirmative defense is not pled with particularity, it is futile.  *Trs. of Loc. 813*

*Ins. Tr. Fund*, 2012 WL 4327070, at *5 (dismissing affirmative defense of fraud for

failure to plead with particularity) (collecting cases).

Defendants seem to recognize this deficiency, offering an alternative pleading in their Reply brief. (Reply at 2–3). The Court will not permit Defendants to amend their proposed affirmative defense by including an alternative pleading in a brief, and a reply brief at that. Nor will the Court give Defendants a second bite of the apple by filing a renewed motion to amend. Discovery is closed, and the deadlines for amending the pleadings have long passed. Defendants shall not have yet another chance to prolong this case.

Defendants also seek to add an affirmative defense for failure of consideration due to the allegedly late deposit into escrow. (Proposed Answer at 8). "Where consideration supporting the contract has failed, the performance of the non-breaching party is excused. A failure of consideration occurs whenever the promisor fails, without his or her fault, to receive the *quid pro quo* for its performance." Glen Banks, 28 N.Y. Prac., Contract Law § 20:29 (2021). Failure of consideration is a defense for non-performance and permits a party to rescind the contract. *Id.* §§ 2:54, 12:3.

> Rescission based on a failure of consideration is "not permitted for a slight, casual, or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."

*Gap Inc. v. Ponte Gadea N.Y. LLC*, No. 20-CV-4541, 2021 WL 861121, at *10 (S.D.N.Y. Mar. 8, 2021) (quoting *Callanan v. Powers*, 199 N.Y. 268, 284 (1910).

The failure of consideration affirmative defense is futile. Failure of consideration is only a defense where such failure is so complete or material to defeat the purpose of the contract. Defendants have not alleged that the two-month delay in depositing one-seventh of the escrow funds was so material that rescission is warranted. Between May 2015—when the parties executed the Operating Agreement—and July 2015—when the

remaining funds were deposited—Defendants, FCSB, and Shaya Pacific had not yet closed on the underlying property. Defendants did not attempt to close on the property and were never prevented from doing so due to insufficient funds. Of the $700,000 Defendants sought to raise, the vast majority—$600,000—was already in escrow. A less than two-month delay transferring a minority of investment into escrow does not rise to the level of breach sufficient to justify a failure of consideration defense, particularly when it not alleged that the delay had any impact on any other benefit attendant to the contract. And ultimately the amounts due were transferred into escrow. *Cf. Nolan v. Sam Fox Pub. Co.*, 499 F.2d 1394, 1399 (2d Cir. 1974) (declining to order recission where there was not complete failure to pay); *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989) (same).

Because both affirmative defenses would be futile, Defendants may not amend their answer to add affirmative defenses for fraud and failure of consideration.

<u>CONCLUSION</u>

For the reasons stated above, the Court respectfully recommends that Defendants' motion to amend their answer be denied.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

SO ORDERED.

/s/ Sanket J. Bulsara

SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York
October 8, 2021