Clerk's Office
Filed Date: 3/29/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BRIAN A. SIDMAN, BETSY VONN GINN,
WILLIAM T. HORNER, and BAS PARKING
GROUP PACIFIC, LLC,

                        Plaintiffs,

        -against-

CONCORD ARENA PARKING, LLC and            NOT FOR PUBLICATION
ARIEL JACOBOV,                            MEMORANDUM & ORDER
                                          15-cv-07426 (CBA) (SJB)
                        Defendants.
-----------------------------------------------------------X
CONCORD ARENA PARKING, LLC and
ARIEL JACOBOV,

                        Third-Party Plaintiffs,

        -against-

PARK 700 PACIFIC, LLC,

                        Third-Party Defendant.
-----------------------------------------------------------X
```

**AMON, United States District Judge:**

## INTRODUCTION

On December 31, 2015, Plaintiffs Brian A. Sidman, Betsy Vonn Ginn, William T. Horner, and BAS Parking Group Pacific, LLC (collectively, "Plaintiffs") initiated this action against Shaya B. Pacific I LLC ("Shaya Pacific"), Concord Arena Parking, LLC ("Concord"), Ariel Jacobov, Park 700 Pacific LLC ("Park 700"), and FCOR, LLC.[1] (ECF Docket Entry ("D.E.") # 2.) On April 6, 2020, Plaintiffs filed a Third Amendment Complaint, (D.E. # 117 ("Third Amended Complaint" or "TAC")), against solely Concord and Jacobov (together, "Defendants"), and on

---

[1] This case was assigned to the Honorable Joseph F. Bianco until its reassignment to the undersigned on April 5, 2019.

1

April 20, 2020, Defendants filed their answer, (D.E. # 119 ("TAC Answer")). On April 1, 2021, Defendants moved to amend their answer to the TAC, seeking to add two counterclaims and two affirmative defenses. (D.E. # 140; D.E. # 141; D.E. # 142.) I referred the motion to the Honorable Magistrate Judge Sanket J. Bulsara, and on October 8, 2021, he issued a report and recommendation recommending the motion be denied. (D.E. # 156 ("R&R").) For the reasons set forth below, I adopt the R&R's recommendation to deny Defendants' motion to amend.

## BACKGROUND

The Court presumes the parties' familiarity with the facts giving rise to this litigation and the instant motion and will recount them only as necessary for this opinion.

On June 10, 2013, Concord, which Jacobov has owned and controlled during all relevant periods of this dispute, executed a contract of sale with Shaya Pacific and First Central Savings Bank ("FCSB") to purchase a garage unit and commercial unit in a condominium development at 700 Pacific Street in Brooklyn, NY. (TAC ¶¶ 10, 12; TAC Answer ¶¶ 10, 12.) According to Plaintiffs, Jacobov and Sidman discussed "form[ing] a joint venture to raise the balance of the funds necessary to close" on the real estate deal, (TAC ¶ 18), and Jacobov executed an operating agreement in May 2015 with Plaintiffs to form Park 700 "to acquire, own and manage" the targeted property, with Plaintiffs supplying the majority of the funds,[2] (D.E. # 117-2 ("Operating Agreement") ¶¶ 1.44, 2.5, Ex. A).

This relationship between Plaintiffs and Defendants was relatively short. According to Plaintiffs, by December 2015, Jacobov began pursuing independent discussions related to the real estate deal. (TAC ¶ 39.) Defendants deny this allegation, but acknowledge that, "[i]n December

---

[2] Specifically, Horner provided $600,000, BAS Parking Group Pacific, LLC and Vonn Ginn each contributed $50,000, and Jacobov contributed $100,000. (Operating Agreement Ex. A.)

2

2015, Jacobov notified Plaintiffs that his fiduciary and contractual obligations to them would cease on December 31, 2015." (D.E. # 157 ("Objections") at 3.[3]) This conduct precipitated the now more than six years of litigation between the parties. Ultimately, Concord closed on a contract with FCSB and Shaya Pacific to purchase the garage unit at 700 Pacific Street—without the Plaintiffs—in November 2017. (TAC ¶¶ 49-50; TAC Answer ¶¶ 49-50.)

On April 1, 2021, Defendants moved for leave to amend their answer to the TAC based on information they claimed to have only recently discovered. First, although Plaintiffs agreed to collectively contribute $700,000 to the real estate purchase, (Operating Agreement Ex. A), and placed the funds in an escrow account, (D.E. # 143 at 1), Defendants assert that "a portion of the Escrow Funds were not deposited by Plaintiffs until months after the Operating Agreement and Side Letter were signed," (D.E. # 142 ("Mot. to Amend") at 3). As support, they rely on documents showing that of the $700,000 Plaintiffs contributed, the final $100,000 was not deposited into the escrow account until July 2015. (See D.E. # 141-6.) Based on this information, Defendants seek to add two additional affirmative defenses: (1) fraud and (2) failure of consideration. (D.E. # 141-8 ("Proposed Amended Answer") at 8.)

Second, Defendants assert that "Plaintiffs secretly moved the Escrow Funds into an account that they controlled." (Mot. to Amend 4.) This claim is based on a letter from Rosen Law LLC ("Rosen Law") dated February 19, 2016, in which the firm confirmed that it would receive and place in escrow funds from Salamon, Gruber, Blaymore & Strenger, P.C. ("Salamon Gruber"), which initially held the funds in escrow. (D.E. # 141-7.) Based on this information, Jacobov sought to add two counterclaims, "individually and derivatively as a member in the name and right

---

[3] Unless otherwise stated, all references refer to the document's internal pagination.

of Park 700 Pacific": (1) breach of fiduciary duty and (2) breach of contract. (Proposed Amended Answer 9-12.)

On October 8, 2021, Magistrate Judge Bulsara recommended denying the motion for multiple reasons, including that the amendments were both untimely and futile. Defendants timely objected on October 22, 2021, (Objections), and Plaintiffs replied on November 1, 2021, (D.E. # 158 ("Response")).

## LEGAL STANDARDS

### I. Report and Recommendation

When reviewing a magistrate judge's report and recommendation, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. § 636(b)(1)(C). As to the portions of a report and recommendation to which there are no objections, "the Court 'need only satisfy itself that there is no clear error on the face of the record.'" LG Cap. Funding, LLC v. FLASR, Inc., 422 F. Supp. 3d 611, 615 (E.D.N.Y. 2018) (quoting Est. of Ellington ex rel. Ellington v. Harbrew Imps. Ltd., 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011)). However, when a party submits a timely objection, the district court reviews de novo the parts to which the party objected. 28 U.S.C. § 636(b)(1)(C); see also LG Cap. Funding, 422 F. Supp. 3d at 615. Even when conducting de novo review, if an objecting party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Velasquez v. Metro Fuel Oil Corp., 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014) (quoting Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y 2008)).

### II. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that district courts "should freely give leave when justice so requires." However, "evidence of undue delay, bad faith or dilatory motive

4

on the part of the movant, undue prejudice to the opposing party, or futility" may be grounds for denying leave to amend. Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000). When considering whether a proposed amendment is futile, "the standard . . . is the same as the standard for granting a motion to dismiss." IBEW Loc. Union No. 53 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015).

Regarding the timeliness of proposed amendments, when a motion for leave to amend is filed after court-set deadlines have passed—as is the case here—Rule 15's leniency is tempered by Rule 16(b)'s requirement that schedules "may be modified only for good cause." Fed. R. Civ. P. 16(b); see Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000) (Sotomayor, J.); Gullo v. City of New York, 540 F. App'x 45, 46 (2d Cir. 2013) (summary order). Accordingly, "if the motion is filed after the deadline imposed by the district court in its scheduling order," then "a party must show 'good cause' to amend his or her complaint." Werking v. Andrews, 526 F. App'x 94, 96 (2d Cir. 2013) (summary order) (quoting Parker, 204 F.3d at 339). Establishing "good cause" is the moving party's burden. See Parker, 204 F.3d at 340. Since Defendants moved to amend after discovery came to a close (and after multiple extensions were granted), Defendants must demonstrate "good cause" for the Court to grant leave to amend.[4] (See R&R 10-11 (noting that since filing the TAC and the TAC Answer, "the parties have asked to amend and extend the discovery schedule five separate times. . . . [T]hey acted as though the events precedent to the close of discovery, i.e. the expiration of the time to amend, had long passed.").) As discussed below, they failed to do so.

---

[4] Defendants do not acknowledge in the Objections that Rule 16 influences the Court's analysis and, instead, act as if only the permissive standard of Rule 15 governs. (See Objections 8.)

5

## DISCUSSION

### I. Unopposed Recommendation that the Proposed Affirmative Defenses are Futile

Defendants did not object to the R&R's determination that their proposed affirmative defenses are futile. (See R&R 19-22.) If proposed amendments are deemed futile, that in and of itself justifies denying leave to amend, regardless of whether or not the amendments are timely. See Meimaris v. Royce, No. 19-3339, 2021 WL 5170725, at *6 (2d Cir. Nov. 8, 2021) (summary order).

Since there are no objections to the R&R's recommendation that the affirmative defenses are futile, I review them for "clear error." LG Cap. Funding, 422 F. Supp. 3d at 615. Finding no such error, I adopt the R&R's recommendation. Additionally, even under the more probing de novo review, I find that the affirmative defenses are futile. As discussed earlier, futility is determined by whether the proposed amendment would survive a motion to dismiss; here, neither proposed affirmative defense would. Under New York law, "'[a] contract may be rescinded for failure of consideration, . . . for such a breach as substantially defeats its purpose,' including breaches that were 'so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.'" Courchevel 1850 LLC v. Wisdom Equities LLC, 846 F. App'x 33, 35 (2d Cir. 2021) (summary order) (first alteration in original) (quoting Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co., 92 N.E. 747, 752 (N.Y. 1910)). Defendants' failure of consideration defense is premised on $100,000 of the expected $700,000 from Park 700 members not being deposited until two months after the Operating Agreement was signed. The delay in depositing a minority of the capital at issue was not "so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." Id. (quoting Callanan, 92 N.E. at 752).

The R&R also correctly notes that Defendants' affirmative defense of fraud was deficient because it was not pled with the specificity required by Federal Rule of Civil Procedure 9(b). (R&R 20-21.) "To state a claim with the required particularity, a complaint 'must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Stevelman v. Alias Rsch. Inc., 174 F.3d 79, 84 (2d Cir. 1999) (quoting Acito v. IMCERA Grp. Inc., 47 F.3d 47, 51 (2d Cir. 1995)). Defendants implicitly admit that their proposed pleadings do not satisfy Rule 9(b) and attempt to rectify this issue by providing revised pleadings in their reply and asking the Court to grant their motion on this basis or, in the alternative, "deny this motion without prejudice to allow [them] to cure any deficiency." (D.E. # 145 ("Reply") at 2-3.)

Magistrate Judge Bulsara correctly declined to consider the revised pleadings because he would not "permit Defendants to amend their proposed affirmative defense by including an alternative pleading in a brief, and a reply brief at that." (R&R 21.) Furthermore, "[t]o state a claim for fraud under New York State law, a plaintiff must allege '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 398 (E.D.N.Y. 2018) (quoting Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006)). Even considering the proposed allegations in the reply, Defendants do not allege that when Sidman represented that all of the capital contributions would be made that he had "knowledge of its falsity" or had "intent to defraud." (See Reply 2-3.) Additionally, Defendants do not plead what the resulting damages are. (Id.) As such, even under de novo review, I find the affirmative defense of fraud is also futile. Thus, neither affirmative defense warrants granting leave to amend.

## II. Defendants' Objections

Defendants object to the R&R's determination that their counterclaims are untimely. As noted earlier, since Defendants have moved to amend after court-set deadlines, they must demonstrate "good cause" for their delay. See Parker, 204 F.3d at 339-40. Although the instant litigation commenced in 2015, Defendants argue that Magistrate Judge Bulsara "erred" in using that as the measuring point and highlight that they filed their motion to amend less than a year after Plaintiffs filed the TAC. (Objections 1.) Moreover, Defendants argue that there is no evidence that they acted with "undue delay, bad faith, or dilatory motive" because the facts giving rise to their proposed counterclaims were only discovered on February 1, 2021 through the letter produced by Rosen Law. (Id. at 9.) Four days after receiving said letter, Defendants filed their request for a pre-motion conference with respect to the anticipated motion to amend. (D.E. # 135.)

Defendants' argument is meritless. Although I am willing to assume that the commencement of this litigation in 2015 should not be the measuring point for timeliness, it is clear that Defendants knew from an earlier round of discovery—before the TAC was filed—that the funds at issue had been transferred from one escrow account to another, which is the basis for their counterclaims. When Sidman was deposed on December 28, 2017, he discussed that the funds in the escrow account had been transferred from the original account location with Salamon Gruber to Rosen Law and then to Squire Patton Boggs. (R&R 11; D.E. # 144-1.) Sidman explicitly stated, "the escrow was moved to different accounts," (D.E. # 144-1 at 53:9), and explained that they were transferred to Rosen Law and Squire Patton Boggs, (id. at 54:25-55:24).

Defendants do not deny that they knew for over three years prior to filing their motion to amend that these funds had been transferred from one escrow account to another. Instead, they try

8

to circumvent this fact by claiming they "were previously unaware that upon transfer to a second escrow account, they were no longer being held <u>for the benefit of Park 700</u>" and only learned of this information through a document produced on February 1, 2021 through subpoenaing a nonparty. (Objections 9.)

There are multiple problems with their attempted justification for the delay. To begin with, Defendants have not compellingly explained how the purportedly withheld February 19, 2016 Rosen Law letter demonstrates that the escrow funds were no longer being held for the benefit of Park 700, especially when Plaintiffs had earlier provided in discovery documents showing that the escrow funds were subsequently transferred from Rosen Law to Squire Patton Boggs for Park 700, (D.E. # 144-2 at 5[5]), and that the funds were not returned to the individual Plaintiffs until after Concord closed on the sale, (<u>id.</u> at 6-9). Secondly, even if one assumes arguendo that the beneficiaries changed, Defendants do not explain how the Rosen Law letter is somehow a smoking gun when they knew for years that the escrow funds were transferred to different accounts without Jacobov's consent. (<u>See</u> R&R 11-12.) Defendants do not explain why Sidman's deposition did not provide sufficient information for them to allege this counterclaim or, at the very least, put them on notice to look into further relevant information.[6] Moreover, as noted, although Plaintiffs did not produce the specific Rosen Law letter, they did produce records documenting the transfer of escrow funds from Salamon Gruber to Rosen Law to Squire Patton Boggs. (<u>See</u> D.E. # 144-2 at 5-6.) A delay is not justified when "the essential facts underlying the [proposed] claim" were already known to the party seeking to amend, despite claims of newly discovered facts.

---

[5] The pincites in D.E. # 142-2 refer to the docketing pagination.
[6] Moreover, even by Defendants' own account, they only state that they "had no <u>conclusive evidence</u> that the Escrow Funds were not being held for the benefit of Park 700" before they ascertained the Rosen Law letter, (Mot. to Amend 3 (emphasis added)), not that they lacked knowledge altogether prior to the TAC-related discovery.

Classicberry Ltd. v. Musicmaker.com, Inc., 48 F. App'x 360, 362 (2d Cir. 2002) (summary order); see also Parker, 204 F.3d at 341. Defendants have failed to "show the diligence required for a finding of good cause" because they "'knew, or should have known' the facts constituting each of [their] proposed amendments before the [court's] deadline." Hadid v. City of New York, 182 F. Supp. 3d 4, 9-10 (E.D.N.Y. 2016) (quoting Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y.2012)), aff'd, 730 F. App'x 68 (2d Cir. 2018).

Defendants also argue that these counterclaims did not become relevant until the TAC was filed, (Objections 10), but that does not help their case. Rather, it highlights that they understood these counterclaims to be germane once Plaintiffs filed the TAC and, thus, should have included them in their answer.

In sum, I find under de novo review both that Defendants' proposed affirmative defenses are futile and their proposed counterclaims are untimely. Since these conclusions are dispositive of Defendants' motion, I need not address Defendants' other objections to the R&R.

## CONCLUSION

For the reasons stated above, I adopt Magistrate Judge Bulsara's recommendation to deny Defendants' motion for leave to amend.

SO ORDERED.

Dated: March 29, 2022
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge